UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION AT DETROIT

UNITED STATES OF AMERICA,               Case No. 12-20545

                Plaintiff,               Honorable Bernard A. Friedman

        v.

D-1 MARK JOUETT APSEY,
a.k.a. "Jay Apsey,"
a.k.a. "Jay,"
a.k.a "Mark Jovett Apsey,"

                Defendant.
_____/

## SENTENCING MEMORANDUM ON BEHALF OF THE UNITED STATES

Now Comes the United States of America, by and through Barbara L. McQuade, United States Attorney for the Eastern District of Michigan, and Rita Elizabeth Foley and Julie A. Beck, Assistant United States Attorneys, and hereby files this Sentencing Memorandum on behalf of the United States.

### I.    Introduction

The United States adopts the description of Defendant Apsey's offense conduct as detailed by the Probation Officer in the Presentence

Investigation Report initially dated June 30, 2014 and revised on August 15, 2014, specifically Pages 5 through 9 and Paragraphs 7 through 31.

Defendant Apsey was first charged in August 2012, in an Indictment [Docket No. 3] which was superseded in November 2012.  On December 3, 2012, Defendant Apsey was arrested by agents of the DEA and was arraigned on the First Superseding Indictment which charged him with Conspiracy to Launder Monetary Instruments in violation of 18 U.S.C. §§ 1956(h), 1956(a)(1)(A), 1956(a)(1)(B)(i)-(ii), 1956(a)(3) and 1957 (Count One).  Defendant Apsey was also charged with two counts of Cross-Border Money Laundering in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts Two and Three) and with one count of Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, Aiding and Abetting, in violation of 18 U.S.C. §§ 1952(a)(1), 1952(a)(3), 2 (Count Five) [Docket No. 4].[1]

On May 6, 2014, Defendant Apsey pled guilty before this Honorable Court to Count Five of the First Superseding Indictment which charged him with violating 18 U.S.C. §§ 1952(a)(1), 2 – Aiding and Abetting the Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises.  The guilty plea was made pursuant to a Rule 11 Plea

---

[1] The original Indictment and First Superseding Indictment charged the defendant as Mark "Jovett" Apsey.  An oral motion was made by the United States, and granted by the Court on May 6, 2014, correcting the spelling of the defendant's name to Mark "Jouett" Apsey.

Agreement [Docket No. 62];  the guilty plea was accepted by the Court. There is no cooperation agreement between the United States and Defendant Apsey;  motions pursuant to USSG §5K1.1 or Fed.R.Crim.P. 35 are not anticipated.  Defendant Apsey's bond was continued.

A Presentence Investigation Report was completed by the Probation Department on June 30, 2014 and the parties have had the opportunity to review it and to respond to the report.  A Revised Presentence Investigation Report was issued by the Probation Department on August 15, 2014, along with an Addendum.  The Addendum to the PSR identifies three remaining objections by the defendant which remain unresolved and may need to be addressed by the Court at the sentencing hearing.

## II.    Factors to Be Considered in Imposing a Sentence

Title 18 of the United States Code, Section 3553(a), provides the framework which guides the Court when imposing sentence upon a criminal defendant.  The statute requires that a Court impose a sentence, "sufficient but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection."  18 U.S.C. § 3553(a).  The Court must consider the, "nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  The sentence imposed by the Court must also, "reflect the seriousness of the

offense, […] promote respect for the law, and […] provide just punishment for the offense." 18 U.S.C. § 3353(a)(2)(A). The sentence must also, "afford adequate deterrence to criminal conduct and […] protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(B)-(C). Finally, the sentence imposed must, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D).

The Court must also consider, "the kinds of sentences available…[and] the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing] guidelines." 18 U.S.C. §§ 3553(a)(3), 3553(a)(4)(A). The Court should also take into account any pertinent policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3553(a)(5).

The Court must also factor into its sentencing decision, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Likewise a Court must consider whether there is a need to impose restitution to any victim or victims of the defendant's offenses. 18 U.S.C. § 3553(a)(7).

## III.   Application of the Sentencing Guidelines

Title 18 of the United States Code, Section 3553(b), instructs the Court on the application of the Sentencing Guidelines in the imposition of a sentence upon a criminal defendant.  However, in 2005, the Supreme Court, excised 18 U.S.C. § 3553(b)(1) from the Sentencing Reform Act of 1984 and declared that the Sentencing Guidelines are no longer mandatory but rather are advisory.  United States v. Booker, 543 U.S. 220, 259 (2005). Nevertheless, the correct calculation of the applicable guidelines range remains the starting point for federal sentencing, and a sentencing court is still required to consider the guidelines range in fashioning a sentence. Booker, 543 U.S. at 245.

## IV.   Statutory Mandatory Minimum/Maximum Sentences

Defendant Apsey pled guilty to Count Five of the First Superseding Indictment:  a single count of Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, Aiding and Abetting, 18 U.S.C. §§ 1952(a)(1)(A), 2, an offense for which there is no statutory mandatory minimum sentence.  The statutory maximum sentence under 18 U.S.C. § 1952(a)(1)(A) is 60 months incarceration:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of any unlawful activity; [. . .]

and thereafter performs or attempts to perform—
(A) an act described in paragraph (1) or (3) shall be fined under
this title, imprisoned not more than 5 years, or both…

18 U.S.C. § 1952(a)(3)(A).

## V.   Analysis

The Supreme Court has declared that, "a district court should begin
all sentencing proceedings by correctly calculating the applicable
Guidelines range." Gall v. United States, 552 U.S. 38, 49 (2007), *citing*
Rita v. United States, 551 U.S. 338, 347-48 (2007).  "As a matter of
administration and to secure nationwide consistency, the Guidelines should
be the starting point and the initial benchmark." Gall, 552 U.S. at 49.  The
Sentencing Guidelines remain an indispensable resource for assuring
appropriate and uniform punishment for federal criminal offenses.

This Court must also determine whether any statutory mandatory
minimum sentence must be imposed, must be aware of any statutory limit
that imposes a maximum cap on the sentence, and must consider all of the
sentencing factors set forth in Section 3553(a) of Title 18, including the
sentencing range calculated by application of the Sentencing Guidelines.
"Sentences must be both procedurally and substantively reasonable."
United States v. Kamper, 748 F.3d 728, 739 (6th Cir.2014), *quoting* United
States v. Castilla-Lugo, 699 F.3d 454, 458-59 (6th Cir.2012).

### A.   Statutory Maximum Sentence

The Presentence Investigation Report calculates the guidelines range for Defendant Apsey to be 188 to 235 months, however, the maximum sentence permitted by law is 60 months (*see* 18 U.S.C. § 1952(a)(3)(A)). Thus, the Court may not impose a sentence in this matter greater than 60 months.

### B.   Statutory Mandatory Minimum Sentence

There is no statutory mandatory minimum sentence for a defendant whose sole count of conviction is a violation of 18 U.S.C. §§ 1952(a)(1), 2.

### C.   Supervised Release

Defendant Apsey pled guilty to Count Five of the First Superseding Indictment which charged him with one count of Aiding and Abetting the Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises, in violation of 18 U.S.C. §§ 1952(a)(1), 2.  Since the maximum term of imprisonment authorized for a violation of 18 U.S.C. § 1952(a)(1) is five or more years but less than 10 years, Defendant Apsey's crime is categorized as a Class D Felony, *see* 18 U.S.C. § 3559(a)(4).

Title 18 of the United States Code, Section 3583(b)(2) caps the term of supervised release the Court may impose for a Class D Felony at not more than three years.  The United States Sentencing Guidelines provide

that, for a Class D felony, the length of a term of supervised release shall be at least one year but not less than three years, USSG §5D1.2(a)(2). Thus, the applicable range for the term of Supervised Release to be imposed at Defendant Apsey's sentencing is one to three years.

### D.      Sentencing Guidelines Calculations

#### 1.      Disparity in Sentencing Guidelines Calculations

The Guidelines Worksheets which are part of Defendant Apsey's Rule 11 Plea Agreement calculated the sentencing guidelines range to be 292-365 months (*see* Docket No. 62, Pg ID 229).  Defendant Apsey's guidelines were calculated by the Probation Department  to be 188 to 235 months (for a total offense level of 35 and a Criminal History Category of II, *see* 8/15/14 revised PSR).  The difference between the calculation in the Rule 11 worksheets and those of the Probation Department are found in the calculation of the Base Offense level as follows:

| USSG § Applied | Rule 11 Worksheets | Probation Calculation |
|---|---|---|
| § 2E1.2(a)(2) + §2S1.1 | 8 | 8 |
| §2S1.1(a)(2) + §2B1.1(b)(1)(H) for $724,000 amount | +14 | +14 |
| §2S1.1(b)(1)(B) (controlled substances) | +6 | +6 |
| §2S1.1(b)(2)(C) (business of laundering funds) | +4 | +4 |

| | | |
|---|---|---|
| §2S1.1(b)(2)(B) (conviction under 18 U.S.C. § 1956 money laundering) | +2 (only applies if underlying conviction is for 18 U.S.C. § 1956; defendant's conviction is for 18 U.S.C. § 1952, thus +2 is not applicable here) | 0 |
| §2S1.1(b)(3) (sophisticated means) | +2 (only applies if underlying conviction is for 18 U.S.C. § 1956; defendant's conviction is for 18 U.S.C. § 1952, thus +2 is not applicable here) | 0 |
| Base Offense Level | 36 | 32 |
| §3B1.1(a) (role in the offense as organizer/leader) | +4 | +4 |
| §3C1.1 (obstruction of justice) | +2 | +2 |
| Adjusted Offense Level | 42 | 38 |
| §3E1.1(a), (b) (acceptance of responsibility) | -3 | -3 |
| Total Offense Level | 39 | 35 |
| Criminal History Points | 3 | 3 |
| Criminal History Categ. | II | II |
| Guidelines Range | 292-365 | 188-235 |

The United States accepts the guidelines as calculated by the Probation Department as correct, and acknowledges that the Sentencing Guidelines range applicable to Defendant Apsey in this case is 188 to 235 months. However, despite the guidelines calculation of 188 to 235 months, the maximum sentence permitted is 60 months (*see* 18 U.S.C. §1952(a)(3)(A)).

## 2.   Objections to the Presentence Report

Pursuant to the August 15, 2014 Addendum to the Presentence Report, there are three objections by the defendant (addressing Paragraphs 8, 39, and 69 of the PSR) which remain outstanding to be resolved by the Court at the Sentencing Hearing.  There are no unresolved objections on behalf of the Government.  The Government will be ready to call witnesses at the Sentencing Hearing, if necessary, to testify to the factual basis giving rise to the findings of the Probation Department to which the defendant objects.

### a.   Defendant Apsey Retained a Portion of the Laundered Cash for His Own Use

Mr. Apsey objects to the finding of the Probation Department regarding his retention/use of laundered funds for the purpose of lavish vacations.  The United States agrees with the finding of the Probation Department.  The United States would point, as an example of lavish travel and retention/use of laundered funds, to Mr. Apsey's travel to a casino in Las Vegas, Nevada during the time period alleged in the First Superseding Indictment.  Specifically, in or around June 2009, there were $90,000 in expenditures by the defendant and approximately $140,000 in wire transfers to the casino, including monies derived from approximately

$70,000 in unexplained cash deposits into bank accounts owned or controlled by Defendant Apsey.

If the Court rules in favor of Defendant Apsey on this objection to the PSR and Addendum, it will not have any impact on the calculation of the base or total offense level, or the applicable guidelines range.

### b.    Defendant Apsey was an Organizer and Leader of Extensive Criminal Activity

The defendant objects to the Probation Department imposing +4 level adjustment to the guidelines calculation in finding that he was a leader/organizer of criminal activity involving 5 or more participants or that was otherwise extensive.  The United States agrees with the finding of the Probation Department.  The Government notes that the +4 level addition for role in the offense pursuant to USSG §3B1.1(a) was included in the calculation of the Guidelines Worksheet which are part of the Rule 11 Plea Agreement (*see* Docket No. 62, Pg ID 222).

If the Court rules in favor of Defendant Apsey on this objection to the PSR and Addendum, it will impact the calculation of the total offense level and the applicable guideline range.  Specifically, the Court could find that the defendant, while not meriting a +4 increase for being an organizer or leader, was a manager or supervisor under USSG §3B1.1(b), which would

result in a total offense level of 34 and an applicable guidelines range of 168 to 210 months.

In the alternative, the Court could find that the defendant was an organizer, leader, manager or supervisor in criminal activity that involved fewer than five participants or was otherwise not extensive, under USSG §3B1.1(c), which would result in a total offense level of 33 and an applicable guidelines range of 151-188 months.  It is also possible for the Court to find that Defendant Apsey's role in the offense was not that of an organizer, leader, manager or supervisor at all, which would result in a total offense level of 31 and an applicable guidelines range of 121-151 months. Nevertheless, under any permutation of the Court's ruling on this objection, the applicable guidelines range would still be more than twice that of the statutory maximum sentence of 60 months imprisonment.

### c.    Defendant Apsey's Standard of Living Suggests an Ability to Pay a Criminal Fine

Defendant Apsey objects to the conclusion of the PSR and Addendum which state that it appears the defendant has the ability to pay a fine.  The defendant objects and claims that in light of his negative net worth and negative monthly cash flow, he lacks the ability to pay a fine.

Given Mr. Apsey's lavish lifestyle and apparent means, the United States agrees with the findings of the Probation Department.

It is the position of the United States that assets were placed in the name of one of Mr. Apsey's family members in an effort to conceal the ownership and control of monies, and to shield funds from Mr. Apsey's numerous creditors.  The United States is aware that, during the time period of this conspiracy, assets in Mr. Apsey's name or under his control were transferred into the name of a family member and, in so doing, were placed beyond the reach of the defendant's creditors.  For example, during a three month period between July 2009 and October 2009 (and occurring during the time period charged in the First Superseding Indictment), Mark Jouett Apsey caused nearly $60,000 in funds to be wire transferred from one of his business accounts at Charter One Bank into a Chase Bank account in the name of one of his family members, as follows:

| | |
|---|---|
| 07/16/2009 Wire Transfer | $12,000.00 |
| 08/18/2009 Wire Transfer | $19,335.00 |
| 08/31/2009 Wire Transfer | $ 6,000.00 |
| 09/17/2009 Wire Transfer | $ 3,000.00 |
| 09/30/2009 Wire Transfer | $ 8,000.00 |
| 10/09/2009 Wire Transfer | $11,000.00 |
| Total* | $59,335.00 |

Thus, the United States agrees with the conclusions of the Probation Department that the defendant has the apparent means and ability to pay a fine in this matter.

The statutory maximum fine which may be imposed on an individual convicted of a federal felony is $250,000, *see* 18 U.S.C. § 3571(b)(3).  The Sentencing Guidelines at §5E1.2(c)(3) advise a fine range for this offense of $20,000 to $200,000.  Thus, the Court may order Defendant Apsey to pay a fine between $20,000 and $250,000 as part of his sentence in this case.   The Rule 11 Plea Agreement states that there is no agreement between the United States and Defendant Apsey as to a criminal fine, (see Docket No. 63, Pg ID 216).  Whether or not the Court imposes a fine as part of the sentence against the defendant has no bearing on the calculation of the total offense level or the applicable guidelines range.

### E.   § 3553 Factors

The task of a district court, at sentencing, is to impose a sentence upon a defendant that is, "'sufficient, but not greater than necessary to comply with the purposes,' of section 3553(a)(2)."  United States v. Wilms, 495 F.3d 277, 281 (6th Cir.2007), *quoting* United States v. Foreman, 436 F.3d 638, 644 n. 1 (6th Cir.2006).

## (1)    Nature and Circumstances of the Offense and History and Characteristics of Defendant

The Court must consider, in fashioning a sentence, the nature and circumstances of the offense and the history and characteristics of a defendant.  18 U.S.C. § 3553(a)(1).

The United States concurs with the assessment of the Probation Department that Defendant Apsey's offense involved the laundering of the proceeds of crime for drug trafficking organizations, via sophisticated means such as off-shore accounts, the rental of private aircraft to transport bulk currency, and the use of business entities in banking transactions to disguise the source, ownership, nature, and control of the funds.

This is not Mr. Apsey's first contact with the criminal justice system. His criminal history speaks to prior conduct involving fraud and deceit, including a fraudulent claim submitted to his insurance company for more than $50,000 and the forgery of a financial document related to a $2,000,000 commercial line of credit.  In fact, the defendant was still on probation for his conviction on the false insurance claim when he committed the offense to which he pled guilty in this case.  The defendant's offense conduct in this case likewise involves his creation of fraudulent documents and use of deceit to further his crime.  Mr. Apsey has had the

advantages of a privileged life and a college education.  He was in his

fortieth decade of life when he committed the crime to which he pled guilty

in this matter. This case does not involve a lapse in judgment by a young,

uninformed, or disadvantaged person but an educated man's deliberate

involvement in extensive criminal activity.

The defendant accepted responsibility for the criminal conduct

charged in Count Five of the First Superseding Indictment.  Defendant

Apsey's guilty plea came at a late date in these proceedings – in fact, on

the date which was set to be the Final Pre-Trial Conference in this case.

The Government had put forth significant efforts and expended substantial

resources in preparing for trial.  Despite that fact, the Government has

moved for the third point of reduction in the offense level for acceptance of

responsibility under USSG §3E1.1(b), which is reflected in the Rule 11

Guidelines Worksheets [Docket No. 62, Pg ID 229].

The history and characteristics of this defendant also include his

obstruction of justice in deliberately making false statements to federal

agents regarding the ownership, source and purpose of the currency

seized at the airport in April 2009.  Defendant Apsey went further in his

obstruction of justice by creating a false document – a promissory note –

which he faxed to the courier at the airport in an effort to conceal from law

enforcement the ownership and nature of the seized currency.  However, that was not the only false document that Defendant Apsey had a hand in creating in this case.  The defendant also attempted to pay a jeweler to create a false document in an effort to show that the money seized at the Detroit airport was intended for the purchase of jewelry.

These acts of creating false and fraudulent documents were done intentionally, in an effort to deceive law enforcement.  Likewise, Defendant Apsey purchased two "burner" cell phones in New York City in an effort to thwart detection by law enforcement;  he kept one for himself and gave the other to co-conspirator NA, who was directed to pick up and deliver money on more than one occasion by Defendant Apsey.  These facts suggest that these were not mistakes or mere coincidence but were, instead, knowing and deliberate efforts by the defendant to conceal his involvement in the international movement of the proceeds of crime.

## (2)    Seriousness of the Offense, Respect for the Law, and Just Punishment

The second factor requires the Court to impose a sentence which reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. 18 U.S.C. § 3553(a)(2)(A). The Government adopts the position of the Probation Department that laundering the

proceeds of crime for international drug trafficking organizations is indeed a very serious offense, which can lead individuals to ruin their lives and those of their families.

Drug trafficking cannot occur without persons who are willing to pick up, transport, and deliver drug proceeds in bulk currency form. However, drug trafficking only truly proliferates and flourishes when someone, like Defendant Apsey, is willing to deceive at a sophisticated level. Defendant Apsey utilized business enterprises, international bank accounts, and even members of the legal profession, to introduce the proceeds of crime into the U.S. financial system, to lend an air of legitimacy to the transactions, and to disguise the nature, source, ownership and control of the funds. Defendant Apsey's actions in this case ensured that those monies were returned for reinvestment into ongoing criminal activity.

Defendant Apsey's criminal actions ensured that drug trafficking continued within the highest echelon of criminal organizations, and put the community at risk of harm and violence both by the drug users and by the drug kingpins who often employ violent measures in their narcotics trafficking activities. Mr. Apsey also placed those he directed to pick up and deliver bulk currency in danger from other criminals who would seek to rob the cash couriers; not an uncommon occurrence in the transportation

of ill-gotten cash proceeds. Certainly, Defendant Apsey's actions in this case as a leader in international money laundering activities furthered drug trafficking which, in turn, increased the risk of public harm and personal injury to others.

Defendant Apsey was engaged in sophisticated criminal activity. While it is true that some of money movement involved bulk cash pickups and deliveries from hotel rooms, parking lots, and even on a street corner in NYC, the defendant also used financial institutions to launder the money. Defendant Apsey even directed a co-conspirator to drive him from branch to branch of banks in Chicago to make cash withdrawals.

The defendant also put our financial system at risk by purchasing a check cashing store, utilizing the name of a straw owner, which enabled Defendant Apsey to ship the proceeds of crime in bulk currency form via Brinks Armored Car Service and FedEx to cloak the shipments in a veil of legitimacy and avoid raising the suspicions of law enforcement. The defendant also utilized the names of corporations and businesses to conduct financial transactions to avoid detection by law enforcement, including the international wire transfer of funds into co-conspirator NM's account at Chase Bank sent at the direction of Defendant Apsey from a business account at a bank in Panama.

Perhaps one of the worst aspects of Defendant Apsey's criminal activity is his use of the legal profession to conduct his activities.  The defendant duped a Michigan attorney into providing him with the wire transfer information for the attorney's IOLTA account, claiming the information was needed to accept escrow funds for a real estate closing.  Instead, on two occasions, the defendant wire transferred the proceeds of crime from a business account at a private Swiss bank in the Bahamas into the Michigan attorney's IOLTA account.  Defendant Apsey also wire transferred funds from a commercial account in the Bahamas into the attorney trust account of Chicago attorney and co-defendant Mark Hopkins.  The defendant additionally used and directed an attorney to fly to New York to pick up a suitcase full of currency on a street corner in New York and bring it back to Detroit;  this was the $365,440 in cash which was seized by DEA at the Detroit Metropolitan Airport.

### (3)   Need to Afford Adequate Deterrence

The sentence imposed must also, "afford adequate deterrence to criminal conduct and […] protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(B)-(C).  The United States would agree with the assessment of the Probation Department that due to Defendant Apsey's prior criminal history, the seriousness of the instant offense, and

the defendant's history of creating and using false/fraudulent documents, that the sentence imposed needs to deter Defendant Apsey from further criminal conduct.

The sentence imposed in this case must also serve to deter others who seek to enter the lucrative world of money laundering and money movement for criminal organizations.   The sentence of imprisonment imposed on Mr. Apsey should send a message to like-minded individuals that there are serious consequences to participating in the financial side of crimes, and to violating federal laws.  One cannot pretend to turn a blind eye to the source, ownership and purpose behind the movement of millions of dollars in cash.  The sentence in this case should telegraph to those, like Defendant Apsey, who may be well-educated and wear suits and ties, that simply because they avoid sullying their own hands with cocaine or marijuana, they are not insulated from the harsh and real consequences of being a willing participant in criminal activity.

### (4)   Effective Training and Treatment

The sentence imposed must, "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  The Government agrees with the assessment of the Probation Department that

there is no obvious need to include special substance abuse or mental health treatment, or training programs, in the Judgment.

### (5)    Kinds of Sentences Available and Sentencing Range

The Court must also consider, "the kinds of sentences available …[and] the kinds of sentences and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing] guidelines."  18 U.S.C. §§ 3553(a)(3), 3553(a)(4)(A).  The defendant's offense is a Class D felony and the calculation of the applicable sentencing guidelines places him in Zone D of the sentencing table.  As such, the defendant is not eligible for a sentence of probation and a term of imprisonment must be imposed.  USSG §5B1.1. §5C1.1(f).

### (6)    Policy Statements

The Court should also take into account any pertinent policy statements issued by the United States Sentencing Commission.  18 U.S.C. § 3553(a)(5).   The Sentencing Commission, in its September 18, 1997 "Report to the Congress:  Sentencing Policy for Money Laundering Offenses, including Comments on Department of Justice Report," stated that its objectives were to derive policies on money laundering offenses which were more effective, fair, and consistent.  Section III, Page 10.   The

Commission noted that it wanted to address the need for appropriate and
predictable sanctions for money laundering activities which were serious in
nature.  Section IV.B, Page 13.  In stating its objective in revising the
sentencing guidelines for money laundering offenses, the Commission
stated that it, "agrees with DOJ that money laundering constitutes a serious
national and international problem, and has consistently endorsed a
sentencing structure that imposes substantial penalties for financial
transactions which promote drug trafficking or other serious criminal activity
or which obscure the origins of illicit funds."  Section III, Page 10.  The
Sentencing Commission noted that nearly 75 percent of the sentences for
money laundering offenses which they analyzed in fiscal year 1995
involved domestic money laundering offenses.  Section III, Page 12.
However, "the Commission has nonetheless recognized the importance of
supporting heightened international law enforcement efforts. The
Commission agrees that any revised guideline structure must provide very
substantial penalties for concealment or promotion involving international
transactions."  Section III, Page 12.

        The Government acknowledges that Defendant Apsey was convicted
of aiding and abetting the international and foreign travel or transportation
in aid of racketeering and was not convicted of a money laundering

offense.  However, the Government would assert that the financial

transactions, particularly the international financial transactions, conducted

with the proceeds of criminal activity are relevant conduct to be considered

by the Court in fashioning a sentence.  "No limitation shall be placed on the

information concerning the background, character and conduct of a person

convicted of an offense which a court of the United States may receive and

consider for the purpose of imposing an appropriate sentence."  18 U.S.C.

§ 3661, *see also* USSG §1B1.4.   Thus, the United States would aver that

the Sentencing Commission's report to Congress on the sentencing policy

for money laundering offenses may have some bearing on the

determination of Defendant Apsey's sentence in this case.

### (7)   Sentencing Disparities

The Court must also factor into its sentencing decision, "the need to

avoid unwarranted sentence disparities among defendants with similar

records who have been found guilty of similar conduct."  18 U.S.C.

§ 3553(a)(6).  There are two other co-defendants who have been convicted

in this case.  The sentencings for the co-defendants are set to occur after

the sentencing for Defendant Apsey.

### (8)   Restitution, Fines, and Forfeiture

Finally, a Court must consider whether there is a need to impose restitution to any victim or victims of the defendant's offenses.  18 U.S.C. § 3553(a)(7).  In this case, there are no identifiable victims, and thus no need to include any order of restitution in the Judgment.

As previously discussed in Section V.D.2.c of this Memorandum, it is the position of the United States that the defendant has the ability to pay a fine based on his standard of living and access to luxury items and amenities.  The statutory maximum fine which may be imposed on an individual convicted of a federal felony is $250,000, *see* 18 U.S.C. § 3571(b)(3).  The Sentencing Guidelines at §5E1.2(c)(3) advise a fine range for this offense of $20,000 to $200,000.  Thus, the Court may order Defendant Apsey to pay a fine between $20,000 and $250,000 as part of his sentence in this case.  The Government is aware that there are other parties who have either obtained civil judgments against Defendant Apsey or who have filed liens against him in other matters.  In light of the existence of the other outstanding judgment creditors to whom the defendant owes money, and despite the fact that the count to which the defendant pled guilty involved $724,000 in cash, the Government is not asking for a fine at the maximum permitted by statute.  Instead, the United

States would ask that the Court impose a $60,000 fine as a monetary penalty in Defendant Apsey's Judgment in this case.  This figure correlates with the amount of funds which were wire-transferred from the defendant's Charter One business account into his family member's account at Chase Bank during the three-month period spanning July 16, 2009 – October 9, 2009.

The Government would also ask that the Court mandate the defendant's enrollment in the Bureau of Prisons' Inmate Financial Responsibility Program, during his period of incarceration and continuing throughout his term of supervised release.  The Bureau of Prisons adopted the financial responsibility program to, "encourage each sentenced inmate to meet his or her legitimate financial obligations."  United States Bureau of Prisons Program Statement, Directive Number P5380.08 (August 15, 2005), Section 1, Page 1.  The Bureau of Prisons considers an inmate's efforts to fulfill his or her legitimate financial obligations as one indicator of that person's acceptance and demonstration of responsibility.  Id.

Separate and apart from a criminal fine in this case, Defendant Apsey did agree, in his Rule 11 Plea Agreement, to forfeit his right, title and ownership in the currency which was seized by DEA at the Detroit Metropolitan Airport on April 28, 2009 – Three Hundred Sixty-Five

Thousand Four Hundred Forty Dollars ($365,440).  Forfeiture of the

$365,440 in U.S. Currency was also included in the Criminal Forfeiture

Allegations of the First Superseding Indictment.  A civil *in rem* forfeiture

complaint was also filed against the $365,440 in U.S. Currency (Case No.

09-CV-13564, Hon. Bernard A. Friedman).  As part of his Rule 11 Plea

Agreement, Defendant Apsey agreed to execute a Stipulated Consent

Judgment in the parallel civil forfeiture proceeding as to the $365,440 in

currency;  the Stipulated Consent Judgment should be executed prior to

the Sentencing Hearing in this matter.

## VI.   Conclusion

The United States asks that the Court, in sentencing Defendant Mark

Jouett Apsey, impose a term of imprisonment at the statutory maximum

term of 60 months, which is less than a third of the lower end of the

applicable guidelines range of 188 to 235 months.  The United States also

asks that the Court impose a period of three years of supervised release,

following the defendant's imprisonment, with the conditions recommended

by the Probation Department.

The United States further asks that the Court require the defendant to

pay the mandatory $100.00 special assessment to the Clerk of the Court,

that a criminal fine of $60,000 be imposed, and that the Judgment require

Defendant Apsey to participate in the Inmate Financial Responsibility

Program while incarcerated and during his period of supervised release.

Restitution is not applicable in this case, and the forfeiture of

$365,440 in U.S. Currency will be entered in a parallel civil judgment.

A custodial sentence of 60 months following by three years of

supervised release is consistent with the Sentencing Guidelines,

incorporates the § 3553 factors, and is sufficient but not greater than

necessary to satisfy the interests of justice.

Respectfully Submitted,

BARBARA L. MCQUADE
United States Attorney

/s/ Rita E. Foley
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-9520
rita.foley@usdoj.gov
Bar No. P-56361


/s/ Julie A. Beck
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-9717
julie.beck@usdoj.gov
Dated:  October 2, 2014          Bar No. P-53291

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2014, I electronically filed the foregoing using the ECF system which will send notification of such filing to ECF counsel of record, including:

Stephen T. Rabaut, Esq.    srabautlaw@me.com

s/ Rita E. Foley
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan   48226
(313) 226-9520
rita.foley@usdoj.gov
Bar No. P-56361